# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00207-CV

---

**Appellants, Southern California Sunbelt Developers, Inc. and Dan Baer// Cross-Appellants, Donald B. Grammer; Colchester Management Services, LLC; Brenda J. Grammer; GGDG, Ltd; Daralyn E. Grammer-Allen; Big A Technology Limited; Apple Management Services, LLC; Gregory M. Grammer; Cherry Blossom Limited Partnership; Lemon Leaf Limited Partnership; Colchester Financial Limited Partnership; and Jaguar-Piaget Limited Partnership**

**v.**

**Appellees, Donald B. Grammer; Colchester Management Services, LLC; GGDG, Ltd; Daralyn E. Grammer-Allen; Big A Technology Limited; Apple Management Services, LLC; Gregory M. Grammer; Cherry Blossom Limited Partnership; Lemon Leaf Limited Partnership; Colchester Financial Limited Partnership; and Jaguar-Piaget Limited Partnership// Cross-Appellees, Southern California Sunbelt Developers, Inc. and Dan Baer**

---

#### FROM THE 33RD DISTRICT COURT OF BLANCO COUNTY
#### NO. CV08260, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellants challenge the trial court's dismissal of their claims in two partial summary judgments. The cross-appellants challenge the trial court's award of appellate attorneys' fees to appellants/cross-appellees.

Appellants Southern California Sunbelt Developers, Inc. (Sunbelt) and Dan Baer filed suit in Texas seeking to enforce a California judgment. The defendants in the trial court, most of whom are appellees, are four family members (Donald B. Grammer, Brenda J. Grammer, Daralyn E. Grammer-Allen, and Gregory M. Grammer) (collectively, the Grammers)

and ten Grammer entities (Colchester Management Services, LLC; Blanco Realty Advisors Limited Partnership, L.L.P.; GGDG, Ltd.; Big A Technology Limited; Apple Management Services, LLC; Cherry Blossom Limited Partnership; Lemon Leaf Limited Partnership; Colchester Financial Limited Partnership; Jaguar-Piaget Limited Partnership; and Dinvest, Ltd.).[1] We refer to the appellees and cross-appellants collectively as the "Grammer Parties."

Because we conclude that the trial court erred by dismissing Sunbelt and Baer's claims against the Grammer Parties on limitations grounds, we reverse that portion of the final judgment and remand the case for further proceedings. In addition, we modify the judgment because we hold that the trial court erred in its award of appellate attorneys' fees.

## BACKGROUND

As we noted in a prior appeal, "[t]he factual background of this appeal is complex because of the long history of litigation between the parties." *Southern Cal. Sunbelt Devs., Inc. v. Grammer* (*Grammer I*), No. 03-19-00192-CV, 2019 WL 7342249, at *1 (Tex. App.—Austin Dec. 31, 2019, pet. denied) (mem. op.). The litigation has been conducted in both California and Texas. In addition to the parties to this appeal, the litigation has involved multiple other nonparties to the underlying suits and this appeal, including three Nevada limited partnerships who are relevant to the appeal but are nonparties: Banyan Limited Partnership, Orange Blossom Limited Partnership, and Pear Tree Limited Partnership (collectively, "Debtor Partnerships"). In addition to providing the background for the Texas litigation, we provide a detailed history of the

---

[1] For reasons explained below, we have restyled the case to reflect that Blanco Realty Advisors Limited Partnership, L.L.P.; Dinvest, Ltd.; and Brenda J. Grammer are not appellees. In addition, Blanco and Dinvest are not cross-appellants.

California courts' consideration of the cost awards because the dates of the various orders are relevant to the Grammer Parties' limitations arguments.

**Initiation of the Texas Litigation Based on Cost Awards in First California Suit**

In April 2017, Sunbelt and Baer initiated this suit against the Grammer Parties to collect cost awards issued by a California trial court against the Debtor Partnerships in a lawsuit filed in 1996 (the "first California lawsuit").[2] After the California court issued its final judgment in 2011, in accordance with California procedural rules, Sunbelt and Baer sought cost awards from that court against the Debtor Partnerships. *See Banyan Ltd. P'ship v. Baer*, No. G051282, 2016 WL 4382635, at *8 (Cal. Ct. App. Aug. 17, 2016) ("A court may award costs only *after* notice of entry of judgment of dismissal."); *see also id.* (explaining that trial court is statutorily required to award costs to those parties who satisfy the prevailing-party requirements of California Code of Civil Procedure Section 1032).

After the Debtor Partnerships appealed the 2011 judgment and each subsequently filed for Chapter 7 bankruptcy, Sunbelt and Baer sought relief from the automatic bankruptcy stay to have their cost requests heard by the trial court. *See id.* (explaining that "[w]hen a party wishes to challenge both a final judgment *and* a postjudgment costs/attorney fee order, the normal procedure is to file *two separate appeals*: one from the final judgment, and a second from the postjudgment order" (quoting *Torres v. City of San Diego*, 64 Cal. Rptr. 3d 495, 500 (Cal. Ct. App. 2007))). The Debtor Partnerships' bankruptcies were later consolidated and have since closed. Sunbelt and Baer allege, and the Grammer Parties do not dispute, that the unsatisfied

---

[2] IBT International, Inc. was originally another plaintiff in this suit, but in the Plaintiffs' live petition, IBT requested that it be removed as a plaintiff because the debt it sued for had been resolved. It is not a party to this appeal.

creditor claims of Sunbelt and Baer against the Debtor Partnerships were not discharged in the Debtor Partnerships' bankruptcies.

After the California trial court heard Sunbelt and Baer's cost requests and the Debtor Partnerships' motion to tax costs (i.e., their opposition to Sunbelt and Baer's cost requests), it issued a minute order on November 13, 2014, denying $281,264.94 in costs for receiver fees sought by Sunbelt and awarding all other trial-court costs sought by Sunbelt and Baer against the Debtor Partnerships. After the Debtor Partnerships appealed the 2014 cost awards, the California appellate court in August 2016 affirmed the 2014 order for trial-court costs and allowed Sunbelt and Baer to recover their costs on appeal. *Id.* at *11. After remittitur to the California trial court, *see* Cal. R. Ct. 8.272 (requiring court of appeal to issue remittitur after decision in appeal)—and after the Texas suit had been filed in April 2017—in October 2017, the trial court issued a minute order awarding the appellate costs requested by Sunbelt and Baer.[3]

Sunbelt had separately appealed the denial of the receiver costs, and the appellate court overturned that portion of the trial court's order. After remittitur to the California trial court, *see id.*, Sunbelt was awarded the full amount of $281,264.94 of the requested receiver fees in a minute order issued on December 11, 2017.

The California court issued a "Further Corrected Final Judgment Nunc Pro Tunc" on January 15, 2019 ("2019 California Final Judgment"), stating that the court, "*having now fully and finally ruled* upon all post-judgment costs and/or attorneys' fees claims, accordingly revises

---

[3] California procedure requires a party who is awarded costs on an appeal to submit in the trial court a memorandum of costs on appeal, and the opposing party may then seek to strike or tax costs. *See* Cal. Code Civ. Proc. § 1034; Cal. R. Ct. 8.272, 8.278; 3.1700.

4

this Judgment *nunc pro tunc* to add such costs awards." (First emphasis added.) In the 2019 California Final Judgment,

- Baer was awarded $42,091.48 jointly and severally against Banyan, Orange Blossom, and Pear Tree for costs at trial (first awarded in November 13, 2014 minute order);

- Sunbelt was awarded $40,749.24 jointly and severally against Banyan and Orange Blossom for costs at trial (first awarded in November 13, 2014 minute order);

- Sunbelt was awarded $281,264.94 jointly and severally against Banyan and Orange Blossom for receiver fees (first awarded in December 11, 2017 minute order);

- Baer and Sunbelt were awarded $1,933.93 jointly and severally against Banyan, Orange Blossom, and Pear Tree for costs on appeal (first awarded in October 13, 2017 minute order); and

- Sunbelt was awarded $9,306.77 jointly and severally against Banyan and Orange Blossom for costs on appeal (first awarded in October 13, 2017 minute order).

**Proceedings in the Texas Suit Before the First Appeal to This Court**

In the April 2017 Texas suit, Sunbelt and Baer seek to enforce the foreign-court cost awards and allege that the Grammers helped evade payment of those awards through a conspiracy to fraudulently transfer and hide assets in multiple alter-ego entities.[4] *Grammer I*, 2019 WL 7342249, at *1. Sunbelt and Baer allege a number of legal theories in support of their claims for foreign-judgment enforcement and fraud/fraudulent transfer, including alter-ego and veil-piercing theories, the discovery rule, the continuing-tort doctrine, general-partner liability, conspiracy, and aiding and abetting. They seek to impose joint and several liability against all

---

[4] When Sunbelt and Baer filed suit, they sought to enforce the only two cost awards that had been ordered by then (in the November 13, 2014 minute order)—the award to Sunbelt of $40,749.24 in trial costs and the award to Baer of $42,091.48 in trial costs.

5

the defendants for the alleged fraudulent transfers. They seek various remedies in support of their claims, including "all relief allowed under Chapter 24 of the Texas Business and Commerce Code [Texas Uniform Fraudulent Transfer Act (TUFTA)], including all equitable relief afforded by that Texas statute, attorney's fees and costs, and punitive damages . . . ." In particular, they seek "without limitation, relief as provided by [TUFTA] Section 24.008(a)(3)(C)." *See* Tex. Bus. & Com. Code §§ 24.008(a)(3)(C) (establishing remedies of creditors, including in addition to injunctive relief and appointment of receiver, "any other relief the circumstances may require"), .013 (allowing court to award "costs and reasonable attorney's fees as are equitable and just" in any proceeding under this chapter). Sunbelt and Baer also seek a declaration that two general partners, Donald B. Grammer and Apple Management Services (a Texas LLC), are liable for the debts of the Debtor Partnerships. *Grammer I*, 2019 WL 7342249, at *1.

In response to Sunbelt and Baer's original petition, the Grammer Parties filed a general denial but did not plead any affirmative defenses and then filed counterclaims against only Baer. *Id.* A few weeks later, the Grammer Parties filed a Rule 91a motion to dismiss for failure to state a claim, which the trial court granted on September 6, 2017. *Id.* at *1, *5. On February 28, 2019, the trial court granted Baer's summary-judgment motion on the counterclaims, making the Rule 91a dismissal final and appealable.

Sunbelt and Baer appealed the trial court's Rule 91a dismissal to this Court. Our memorandum opinion reversing the trial court's order and remanding the case for further proceedings was issued on December 31, 2019. After the Grammer Parties filed motions for rehearing and for en banc reconsideration, the Court overruled the motions on May 26, 2020. *Id.* at *1. The Grammer Parties subsequently filed a petition for review in the Texas Supreme Court

6

in July 2020. The Texas Supreme Court denied the petition for review in January 2021, and mandate issued in the appeal in March 2021.

**The 2020 California Suit**

On May 26, 2020, Sunbelt and Baer filed a second California suit against Donald and Apple Management.[5] In this suit, Sunbelt and Baer asserted only one claim: general-partner liability against Donald and Apple Management. This suit was actively litigated by both sides on the issue of whether the statute of limitations had run on Sunbelt and Baer's general-partner-liability claim with Donald and Apple Management contending that the claim had accrued on May 31, 2011, the date of the initial California final judgment, and that the three-year statute of limitations applicable under California law to an action on a liability created by statute should apply. In April 2022, the California trial court requested supplemental briefing from the parties on the questions of "the date of accrual of the statute of limitations" and whether the suit was for a liability created by statute within the meaning of California Code of Civil Procedure Section 338(a) or an action upon a judgment within the meaning of California Code of Civil Procedure Section 337.5. Sunbelt and Baer argued that their claim had accrued on January 15, 2019, when the trial court issued the 2019 California Final Judgment containing the cost-award amounts, and that the suit was one to enforce a judgment, not to determine the amount of the cost awards.

On December 1, 2022, Sunbelt and Baer, at the request of the California court, served a "Notice of Ruling on Plaintiffs' Motion for Judgment on the Pleadings." In that notice, Sunbelt and Baer notified the other parties that the California court, after issuing a tentative ruling on November 18, 2022, and after considering the arguments of the parties, "ordered that

---

[5] We refer to the individual Grammers by their first names for clarity.

7

its tentative ruling would become the final ruling of the Court." The court concluded that all necessary elements for imposing general-partner liability against Donald under the applicable Nevada law had been satisfied. In addition, the court concluded that a ten-year statute of limitations applied to the claims, meaning that the suit was timely filed even if the earliest possible accrual date of May 31, 2011, is used. The court ruled that Donald "is individually liable, as general partner of [Pear Tree] and [Orange Blossom]" and "Apple Management is liable, as general partner, . . . of Banyan, Pear Tree and Orange Blossom" for the cost awards imposed against those entities in the 2019 California Final Judgment.

**Proceedings in the Texas Suit After Remand from This Court**

By the time this Court remanded the case to the Texas trial court, the California court had issued the 2019 California Final Judgment. After our remand, Sunbelt and Baer filed their second amended petition in the trial court. That petition alleges substantially the same claims and seeks the same relief as the original petition but also seeks enforcement of the three additional cost awards listed in the 2019 California Final Judgment: the $281,264.94 award for receivership costs and the two awards for appellate costs in the amounts of $9,306.77 and $1,933.93. Sunbelt and Baer also sought and obtained an order awarding them Rule 91a attorneys' fees. The order awarded Sunbelt and Baer $183,781.78 in attorneys' fees against the Grammers jointly and severally. In addition, the trial court awarded Sunbelt and Baer appellate attorneys' fees that were not conditioned on Sunbelt and Baer's prevailing on appeal.

Donald, Brenda, and Dinvest filed a second amended answer, pleading the affirmative defense of limitations to the fraud, fraudulent-transfer, and conspiracy claims. Donald subsequently filed a motion for partial summary judgment on general-partner liability,

8

asserting that the claim "is barred by the applicable 4-year statute of limitations." A few months later, all defendants except Donald, Brenda, Blanco Realty, and Dinvest filed a second amended answer, asserting various affirmative defenses, including that the statutes of limitations bar the fraud, fraudulent-transfer, and conspiracy claims. Those defendants also filed a motion for summary judgment on vicarious general-partner liability. They argued that all of Sunbelt and Baer's claims rely on Donald's liability to Sunbelt and Baer and sought summary judgment based on their assertion that all claims are barred "by the applicable 4-year statute of limitations."

While the summary-judgment motions were pending in the Texas suit, on April 12, 2023, the California court issued a minute order in the 2020 suit on Sunbelt and Baer's "Motion for Entry of Judgment." The order granted the motion and directed Sunbelt and Baer to submit a revised Proposed Judgment for the court's review and signature. Among other conclusions, the court ruled that Donald is individually liable as general partner of Pear Tree and Orange Blossom for the cost awards ordered against them in the 2019 California Final Judgment. Two days after the minute order was issued, the Texas court conducted a hearing on the two summary-judgment motions. Approximately two weeks after the hearing, Sunbelt and Baer filed "Plaintiffs' Motion to Consider New Evidence," stating that the April 2023 minute order had been presented at the hearing but was not included in the record, so they sought to supplement the summary-judgment record and formally requested that the court consider the new evidence, given that the court had taken the motions under advisement and the order had been issued after Sunbelt and Baer's deadline to respond to the motions had passed. A couple of weeks later, in mid-May, Sunbelt and Baer filed "Plaintiffs' Second Motion to Consider New Evidence,"

9

seeking to include the California court's "Final Judgment" in the 2020 suit, which had been signed on May 2, 2023.

On June 6, 2023, the Texas court signed orders granting both summary-judgment motions. In the order on Donald's partial summary-judgment motion on general-partner liability, the trial court ordered that Sunbelt and Baer take nothing against Donald for general-partner liability "arising from the Plaintiffs' California judgments against Banyan LP, Orange Blossom LP, and Pear Tree LP." On the other Grammer Parties' summary-judgment motion on vicarious general-partner liability for the debts of the Debtor Partnerships, the trial court ordered that Sunbelt and Baer take nothing and dismissed all claims with prejudice against those Grammer Parties. The trial court signed these orders without ruling on Sunbelt and Baer's motions to consider new evidence.

On January 24, 2024, Sunbelt and Baer filed a motion for partial nonsuit without prejudice "of all of their other pending claims," except their claim for Rule 91a attorneys' fees. They asserted as follows:

> *All claims for relief, by any party to this cause*, save and except the continued prosecution of claims by SCSD and Baer for the relief previously requested under Texas Rule of Civil Procedure 91a and the relief granted thereon as reflected in this Court's Order on Plaintiffs First Amended Rule 91A Motion for Attorney's Fees signed on May 23, 20[2]2, *have been nonsuited or disposed of*.

(Emphases added). They requested rendition of a final judgment incorporating the award of Rule 91a attorneys' fees set forth in the prior Rule 91a fees order and attached a proposed Final Judgment.

10

On February 2, 2024, Sunbelt and Baer filed an amended notice of partial nonsuit and request for entry of final judgment. In this motion, they addressed the two interlocutory summary judgments:

> On June 6, 2023, pursuant to Defendants' summary judgment motions, this Court entered two interlocutory judgments that dismissed certain of Plaintiffs' claims based on a finding that a four-year statute of limitations barred Plaintiffs' request to find Don Grammer individually liable for a final judgment debt of three California limited partnerships, of which Don Grammer is the general partner.

In this motion, Sunbelt and Baer requested that the trial court vacate the two interlocutory summary judgments granted in favor of Donald and the Grammer Parties. They also attached a certified copy of the California court's May 2, 2023 final judgment in the 2020 suit. They submitted a proposed judgment that included the following language: "It is further ORDERED that the two interlocutory judgments entered in this cause on June 6, 2023 are hereby vacated and dismissed." They later filed a supplement to this motion and attached copies of the relevant California statute of limitations governing enforcement of judgments and the relevant Texas statute of limitations governing enforcement of a foreign judgment.

On February 29, 2024, the trial court signed the "Final Judgment." The final judgment does not vacate the two interlocutory summary judgments. On March 12, 2024, Sunbelt and Baer filed a motion to correct the form of the prior partial summary judgment, asserting that it granted more relief than Donald's motion requested because instead of stating that Sunbelt and Baer take nothing on the five cost awards at issue, the order states that they take nothing against Donald "for general partner liability arising from the Plaintiffs' California judgments against [the Debtor Partnerships]." Sunbelt and Baer contended that this language

11

was error because it granted more relief than Donald requested in his motion and that it could prevent them from executing on the May 2023 final judgment in the 2020 California suit.

This appeal followed.

## ANALYSIS

Sunbelt and Baer complain of the trial court's orders granting Donald and the Grammer Parties' motions for partial summary judgment. The Grammer Parties' cross-appeal complains of the trial court's order awarding Sunbelt and Baer their Rule 91a attorneys' fees. We first address Sunbelt and Baer's appellate issues.

### Sunbelt and Baer's Issues

Sunbelt and Baer raise three issues. In their first issue, they challenge the trial court's order granting Donald's motion for partial summary judgment on general-partner liability. In their second issue, Sunbelt and Baer challenge the trial court's order denying their "Motion to Correct the Form of the Prior Partial Summary Judgment Order Granting More Relief than Defendants' Motion for Partial Summary Judgment Requested." In their third issue, they challenge the trial court's order granting the "Motion for Summary Judgment on Vicarious General-Partner Liability."

## I.     Jurisdictional effect of Sunbelt and Baer's nonsuit on this appeal

As a preliminary matter, before addressing Sunbelt and Baer's issues, we must address a jurisdictional issue raised by the Grammer Parties in their response. The Grammer Parties assert that Sunbelt and Baer's notice of partial nonsuit rendered any question regarding the merits of the partial summary judgments moot. *See Board of Adjustment of San Antonio v. Wende*, 92 S.W.3d 424, 426 (Tex. 2002) (considering whether controversy had become moot

12

before addressing merits of appeal).  Sunbelt and Baer respond that the Texas Supreme Court has long held that while "a nonsuit may have the effect of vitiating earlier interlocutory orders," a nonsuit does not vitiate "[a] decision on the merits, such as a summary judgment," including partial summary judgments.  *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 854 (Tex. 1995) (per curiam).

The Grammer Parties contend that the language used by Sunbelt and Baer to nonsuit all their claims except for their claims for recovery of Rule 91a attorneys' fees constituted an abandonment of the claims that had been addressed in the partial summary judgments and thus rendered moot any appeal of those partial summary judgments.  Sunbelt and Baer stated in their initial "Notice of Partial Nonsuit and Request for Entry of Final Judgment" that "[p]ursuant to Rule 162 of the Texas Rules of Civil Procedure" they "hereby nonsuit, without prejudice, all of their claims filed in this action against any and all of the Defendants," except their Rule 91a attorney-fees claims, upon which the trial court had already ruled in their favor, noting that all other "claims for relief, by any party to this cause . . . have been nonsuited or disposed of."  *See* Tex. R. Civ. P. 162 (allowing plaintiff to voluntarily dismiss or nonsuit its case "[a]t any time before the plaintiff has introduced all of his evidence other than rebuttal evidence").  The trial court's final judgment similarly ordered that "all claims for relief filed in this cause" were nonsuited by Sunbelt and Baer, "except the relief requested and order granting such relief in favor" of Sunbelt and Baer on their Rule 91a motion for attorneys' fees.

In *Hyundai*, the Texas Supreme Court considered whether a partial summary judgment survives a nonsuit.  892 S.W.2d at 854.  The court held that "when a defendant obtains a partial summary judgment on certain of the plaintiffs' causes of action and the plaintiff thereafter moves for a nonsuit as to the whole case," the partial summary judgment becomes

13

final. *Id.* at 854-55. The court reasoned that holding otherwise would allow plaintiffs to avoid the effect of any summary judgment by merely requesting a nonsuit after the case was adjudicated by summary judgment, and thus, "[t]o give any force to the partial summary judgment provisions, those judgments must withstand a nonsuit." *Id.* at 855. As the court explained,

> A partial summary judgment is a decision on the merits unless set aside by the trial court. It becomes final upon the disposition of the other issues of the case. *Once a judge announces a decision that adjudicates a claim, that claim is no longer subject to the plaintiff's right to nonsuit.*

*Id.* (citations omitted) (emphasis added).

The court in *Hyundai* addressed a situation in which after the plaintiffs had nonsuited their claims, they refiled the same claims in a different county, including the claims on which the defendant Hyundai had obtained the partial summary judgment. *Id.* at 854. After Hyundai obtained a modified nonsuit order from the original trial court providing that the claims adjudicated by the summary judgment were dismissed with prejudice, the court of appeals reversed that order. *Id.* The court of appeals reasoned that the right to nonsuit continues until the plaintiffs have put on all their evidence, and because the plaintiffs had not put on any evidence, the summary judgment could not withstand the plaintiffs' right to nonsuit. *Id.* As described above, the supreme court reversed the judgment of the court of appeals concerning the finality of the nonsuit. *Id.* at 855. The supreme court then remanded the case to the court of appeals for it to consider the plaintiffs' claim that the trial court erred when it granted the partial summary judgment. *Id.* Thus, although the express question before the supreme court was not the appealability of the merits of a partial summary judgment after a nonsuit of the case, because

14

the supreme court remanded the case to the court of appeals to consider the plaintiffs' claim that the trial court erred in granting the partial summary judgment, we conclude that the supreme court did not find that the appellate issues related to the partial summary judgment were moot. *See id.*; *see also, e.g.*, *Reynolds v. Murphy*, 266 S.W.3d 141, 146 (Tex. App.—Fort Worth 2008, pet. denied) (holding "that appellant's nonsuit of sole remaining claim did not vitiate the trial court's rulings effectively barring him from pursuing new claims" and that appeal was not mooted by nonsuit); *McClure v. JPMorgan Chase Bank*, 147 S.W.3d 648, 652 (Tex. App.—Fort Worth 2004, pet. denied) (holding that party's nonsuit of remaining claims after partial summary judgment did not vitiate trial court's grant of partial summary judgment "but rather made the partial summary judgment a final, appealable order"); *cf. Newco Drilling Co. v. Weyand*, 960 S.W.2d 654, 656 (Tex. 1998) (per curiam) (following reasoning in *Hyundai* and holding that court of appeals erred in failing to review merits of trial court's grant of partial summary judgment "[b]ecause a *partial summary judgment that the trial court does not vacate is made final and appealable* upon signing of a dismissal for want of prosecution" (emphasis added)).

Although the Grammer Parties acknowledge the Texas Supreme Court cases holding that a party may not refile its claims that were dismissed in a partial summary judgment after nonsuiting its case, *see, e.g.*, *Hyundai*, 892 S.W.2d at 855 (holding that nonsuit "results in a dismissal with prejudice as to the issues pronounced in favor of the defendant"), they argue that "even within that constraint, there is no reason plaintiffs should not be able to abandon claims addressed in a partial summary judgment granted before their nonsuit where they clearly express a desire to do so." In support of this argument, the Grammer Parties rely on *Mobley v. Mobley*, 506 S.W.3d 87 (Tex. App.—Texarkana 2016, no pet.). In *Mobley*, after the defendant-appellee filed a motion for partial summary judgment and the trial court granted that motion, the plaintiff-

appellant voluntarily nonsuited all her claims against the defendant-appellee, asserting that she "no longer desires to prosecute her claims asserted in this lawsuit."[6] *Id.* at 91-92. The court of appeals held that "[b]ecause a nonsuit effectively moots the merits of the underlying case, nothing remained to be resolved on appeal, and because the nonsuit occurred after the partial summary judgment was entered, the dismissal foreclosed any right [the plaintiff-appellant] may have had to refile those claims at a later date." *Id.* at 92. Accordingly, the court of appeals concluded that the plaintiff-appellant's nonsuit mooted any possible error by the trial court on the merits of the summary judgment, and "left [plaintiff-appellant] nothing to appeal on that point." *Id.*

We note that after filing their initial notice of partial nonsuit and request for entry of final judgment, Sunbelt and Baer filed a first amended motion for partial nonsuit and request for entry of final judgment, requesting that the trial court "give full faith and credit to a prior-in-time final judgment entered by a California court and, thereby, vacate [the] two interlocutory [summary] judgments previously granted in this action, which are inconsistent with the California judgment." Sunbelt and Baer argued that the authenticated May 2, 2023 California final judgment, which they filed with the amended motion, satisfied their burden of proof to establish a prima facie case for enforcement of that California judgment by the Texas court. Sunbelt and Baer also attached a proposed final judgment with the amended motion that would have ordered the two interlocutory summary judgments "vacated and dismissed." The trial court declined to sign that proposed final judgment and instead signed the proposed final judgment that

---

[6] The plaintiff later nonsuited her claims against the other defendants, and the court of appeals noted that for simplicity, it was treating the trial court's dismissal orders and partial summary judgment as if the plaintiff-appellant and the defendant-appellee were the only parties before the trial court at the time those orders were entered.

16

Sunbelt and Baer had included with the initial notice of nonsuit, which did not contain language vacating the interlocutory summary judgments. In other words, the trial court's final judgment in substance allowed Sunbelt and Baer to dismiss their claims against Blanco, Dinvest, and Brenda (except the Rule 91a attorney-fees claim against her); did not vacate the two June 6, 2023 interlocutory summary judgments; reiterated the award of Rule 91a attorneys' fees in Sunbelt and Baer's favor; and ordered appellate attorneys' fees if the relevant Grammer Parties pursue an appeal.

The Grammer Parties urge us to construe the trial court's final judgment as allowing Sunbelt and Baer to abandon the claims previously dismissed by the two interlocutory summary judgments, thus rendering any appellate issues related to those summary judgments moot. Sunbelt and Baer's "partial nonsuit" could not constitute an abandonment of the claims upon which summary judgment had been granted under the applicable Texas Supreme Court authority, including *Hyundai* and subsequent cases. To the extent that *Mobley* conflicts with *Hyundai*, we are bound to follow the Texas Supreme Court.

We hold that the trial court's final judgment here, which did not vacate the partial summary judgments, and which allowed the dismissal of Sunbelt and Baer's claims against Blanco, Dinvest, and Brenda (except the Rule 91a attorney-fees claim against her), made those partial summary judgments final and appealable.[7]  *See Hyundai*, 892 S.W.2d at 855.

---

[7] Blanco, Dinvest, and Brenda were all expressly excluded from appellees' summary-judgment motion on vicarious liability. Both sides agree that Sunbelt and Baer's notice of nonsuit thus dismissed their claims against appellees Blanco and Dinvest and their claims against Brenda, except for their claim against her for Rule 91a attorneys' fees. Accordingly, the Court has restyled the case to reflect that Blanco and Dinvest are neither appellees nor cross-appellants and that Brenda is only a cross-appellant.

17

Accordingly, Sunbelt and Baer's appeal on the merits of those partial summary judgments is not moot. We turn now to those issues.

## II. Merits issues related to the partial summary judgments

Sunbelt and Baer assert that the trial court erred by (1) granting Donald's motion for partial summary judgment on general-partner liability, (2) denying Sunbelt and Baer's motion to correct the form of the prior partial summary judgment order granting more relief than Grammer requested in his motion, and (3) granting the other Grammer Parties' motion for summary judgment on vicarious general-partner liability.

**Standard of review**

We review summary judgments de novo. *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). We view the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.* A defendant moving for traditional summary judgment has the burden to conclusively show that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c).[8] "[T]o obtain traditional summary judgment on a limitations defense, the defendant must conclusively prove (1) when the cause of action accrued, and (2) that the plaintiff brought its suit later than the applicable number of years thereafter—i.e., that 'the statute of limitations has run.'" *Draughon v. Johnson*, 631 S.W.3d 81, 89 (Tex. 2021) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 220 (Tex. 2003)).

---

[8] All references to Rule 166a are to the former rule, which remained in effect until March 1, 2026, and was the rule in effect during the trial-court proceedings.

In reviewing the trial court's decision not to enforce Sunbelt and Baer's foreign judgment, we are mindful that "public policy favors the validity of judgments." *See Charles Brown, L.L.P. v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 894 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (quoting *Garza v. Texas Alcoholic Beverage Comm'n*, 83 S.W.3d 161, 166 (Tex. App.—El Paso 2000), *aff'd,* 89 S.W.3d 1 (Tex. 2002)). When an attack is made upon a judgment, whether directly or collaterally, all presumptions "consonant with reason are indulged in order to uphold the binding effect of such judgment." *Garza*, 83 S.W.3d at 166; *see also Roberts v. Hodges*, 401 S.W.2d 332, 334 (Tex. App.—Amarillo 1966, writ ref'd n.r.e.) (noting that every reasonable presumption is indulged to sustain foreign judgment).

**Merits of the Grammer Parties' motions for partial summary judgment on general-partner liability**

We consider Sunbelt and Baer's first and third issues together. As explained in detail below, Donald moved for partial summary judgment on limitations grounds. The other Grammer Parties who sought partial summary judgment asserted in their motion that because Sunbelt and Baer's claims against them for fraud and fraudulent transfer "hinged upon the notion that [Donald] is liable" as a general partner, Sunbelt and Baer's claims for vicarious general-partner liability are barred by the same statute of limitations. The two motions make essentially the same arguments, and Sunbelt and Baer responded to them with one response. Accordingly, we address these two appellate issues together.

Because of the complexity of the parties' arguments and the relevant procedural history, we first explain the parties' summary-judgment arguments in the trial court and the relevant evidence submitted in support of the summary-judgment motions, response, and the reply to the trial court's questions filed by Sunbelt and Baer. We then turn to the parties'

19

appellate arguments and the key questions raised: What statutes of limitations apply to Sunbelt and Baer's suit and their general-partner liability claim? What is the accrual date for the general-partner liability claim?

**A. The parties' summary-judgment arguments and evidence submitted in the trial court**

Donald and the Grammer Parties sought partial summary judgment on the ground that Sunbelt and Baer's claim for general-partner liability "is barred by the applicable 4-year statute of limitations."[9] Donald and the Grammer Parties relied on *American Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015), for their assertion that "the four-year limitations period against a partner begins to run when a final judgment is entered against the partnership." *See* 457 S.W.3d at 431 (concluding that applicable statutes of limitations did not specify when accrual of claim occurs (citing Tex. Civ. Prac. & Rem. Code §§ 16.004(a)(3) (establishing four-year limitations period to bring suit on debt), .051 (establishing four-year residual limitations period))). Donald and the Grammer Parties argued that Sunbelt and Baer's claims against Donald for general-partner liability accrued on May 31, 2011, the date of the initial California final judgment against the Debtor Partnerships.

---

[9] We note that in their second amended answer, Donald, Brenda, and Dinvest pleaded the affirmative defense of limitations as to some claims, asserting that a four-year statute of limitations applies to Sunbelt and Baer's claims for fraud, *see* Tex. Civ. Prac. & Rem. Code § 16.004(a)(4), and fraudulent transfers, *see* Tex. Bus. & Com. Code § 24.010, and that a two-year statute of limitations applies to Sunbelt and Baer's conspiracy claim. They did not plead that the general-partner-liability claim is subject to a four-year statute of limitations before raising it in their summary-judgment motion, but Sunbelt and Baer did not object to the lack of a Rule 94 pleading either in their written response or before the rendition of judgment; therefore, the unpleaded affirmative defense may serve as the basis for summary judgment. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991).

In response, Sunbelt and Baer contended that (1) the statute of limitations for their claims, and thus for general-partner liability for those claims, should be measured from January 15, 2019, the date that the 2019 California Final Judgment was signed, because that is the date the judgment became final under California law, and (2) res judicata or collateral estoppel, or both, defeat Donald's summary-judgment motion because on November 28, 2022, the California court held in the 2020 California suit that Donald "is liable for the cost awards as the general partner of Pear Tree Limited Partnership and Orange Blossom Limited Partnership."[10]  In addition, in a reply filed by Sunbelt and Baer to the trial court's questions, they explained that California law allows an award of costs only "*after* notice of entry of judgment or dismissal," citing *Banyan*, 2016 WL 4382635, at *8, *11 (affirming California trial court's November 2014 postjudgment order of costs and explaining entry of judgment is "*a predicate* to a costs award" (citing Cal. R. Ct. 870(a)(2))); Cal. R. Ct. 3.1700 (establishing when prevailing party may claim costs and procedure for contesting costs).[11]  Thus, Sunbelt and Baer

---

[10]  Sunbelt and Baer attached the California trial court's November 28, 2022 "notice of ruling on plaintiffs' motion for judgment on the pleadings" as one of their summary-judgment exhibits.  The notice states that "the Court ordered that its tentative ruling would become the final ruling of the Court," and the notice reproduced the trial court's ruling in its entirety.

[11]  Sunbelt and Baer filed a motion for the trial court to consider new evidence the day before they filed their "reply to judge's questions."  The evidence that they sought to attach was the April 12, 2023 minute order confirming that the California trial court's November 28, 2022 tentative ruling would be entered as a final judgment without modification.  Sunbelt and Baer asserted in the motion that they presented the April 12, 2023 order at the April 14, 2023 hearing on the Grammer Parties' motions for partial summary judgment, but the hearing record did not include the relevant order.  They sought to supplement the summary-judgment records and formally requested that the trial court consider the April 2023 order because it had taken the summary-judgment motions under advisement.  After the California court issued the final judgment on May 2, 2023, Sunbelt and Baer filed a second motion to consider new evidence and sought to supplement the summary-judgment records with that judgment finding Donald individually liable for the judgments against Pear Tree and Orange Blossom in the 2019 California Final Judgment.  The trial court did not expressly rule on the two motions to consider

argued, even if the trial court applied Texas law to the California orders, the only California orders that would constitute final orders under Texas law are the November 2014 order (which was affirmed in 2016 by the California appeals court) and the 2019 California Final Judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) ("A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record . . . .").

Sunbelt and Baer also explained in their reply that the California court had considered the parties' opposing arguments about whether a three-year limitations period or a ten-year limitations period should apply and determined that the ten-year statute of limitations should apply. However, Sunbelt and Baer asserted, even if the trial court applied the Texas statute of limitations, the Texas corollary to the California three-year limitations period is a four-year limitations period, *compare* Cal. Civ. Proc. Code § 338(a) (suit for liability created by statute), *with* Tex. Civ. Prac. & Rem. Code § 16.004(a)(3) (establishing four-year limitations period to bring suit on debt), *and id.* § 16.051 (establishing four-year residual limitations period), and both states apply a ten-year limitations period to actions to enforce a foreign judgment, *compare* Cal. Civ. Proc. Code § 337.5(b), *with* Tex. Civ. Prac. & Rem. Code § 16.066(b). Thus, under either statute of limitations, Sunbelt and Baer contended that they timely filed the 2017 Texas suit before the expiration of the limitations period based on their argument that the earliest possible accrual date for their claims is November 2014.

The summary-judgment evidence (i.e., the November 28, 2022 notice of ruling) reflects that the Grammer Parties had argued in the California court that a three-year limitations

_____

new evidence before signing its orders granting the Grammer Parties' motions for partial summary judgment. Sunbelt and Baer assert that this failure to rule was an abuse of discretion but note that they are precluded from appealing on this issue because the trial court refused to sign a written order or make a ruling on the record.

period should apply because the liability of a general partner of a limited partnership would not exist but for the Uniform Partnership Act, and thus, Sunbelt and Baer's suit was for a liability created by statute. The California court disagreed. It concluded that both Nevada and California courts recognize that the Uniform Partnership Act is based on common law and that the liability of general partners to a partnership was part of the common-law principles of partnership. Therefore, it concluded, California Civil Procedure Code Section 338(a) did not apply to Sunbelt and Baer's claims. Instead, it held that the claims were governed by the ten-year statute of limitations set forth in Section 337.5(b) for "an action upon a judgment." In addition, the California court concluded that the existence of a judgment and the obligations imposed by that judgment against the Debtor Partnerships "is established by both [Donald] and Apple Management's admissions that 'the [2019 California Final Judgment] is a *final, unappealable judgment*.'" (Emphasis added.)

## B. The parties' arguments on appeal

On appeal, Sunbelt and Baer assert that Donald and the Grammer Parties' summary-judgment motions (1) relied on the wrong state's law by relying on Texas law, (2) relied on the wrong statute of limitations by relying on the four-year statute of limitations, and (3) made incorrect and misleading arguments based on *American Star*. In response, Donald and the Grammer Parties assert that Sunbelt and Baer's lawsuit is not an action to enforce the cost awards subject to the ten-year limitations period because it was not brought against the Debtor Partnerships but instead is an action to obtain a judgment against the general partners.[12]

---

[12] The Court notes that this was not the same ground presented in Donald's summary-judgment motion, which was that the trial court should apply the four-year statute of limitations applicable to a claim for a partner's liability for partnership debt.

Thus, they contend it was appropriate to apply the Texas four-year limitations period that applies to a claim seeking recovery of a partnership debt from a general partner and an accrual date for that claim of May 31, 2011, the date of the initial California final judgment, "when the cost awards were 'incurred' and interest began to run."

Sunbelt and Baer, on the other hand, argue that in the Court's opinion in *Grammer I*, when analyzing their claims for purposes of determining whether there was a legal basis for those claims, we recognized that California law applied to our analysis of the validity of the judgments for cost awards that Sunbelt and Baer sought to enforce in a common-law legal action in Texas. Sunbelt and Baer further contend that the ten-year statute of limitations should apply under both California and Texas law and that if the ten-year statute applies, limitations does not bar their general-partner liability claim, no matter which judgment date is used as the accrual date. In addition, Sunbelt and Baer assert that *American Star* differs from this case because the suit in *American Star* was brought under the Texas Revised Partnership Act seeking to hold individual partners liable for a judgment against a partnership, 457 S.W.3d at 429, and thus did not address liability of a Texas general partner for the debts of his Nevada limited partnerships. They also argue that the supreme court's reasoning in *American Star* supports their position that this proceeding is a judgment-enforcement action against a general partner brought to collect on the judgment debt that the Debtor Partnerships owe and have failed to pay, *see id.* at 431-32, and that accrual of that claim did not occur until the judgment creditor's rights against the partners arise, i.e., after final judgment against the partnership is issued, *see id.* at 428, 431, which they contend is January 15, 2019, when the California 2019 Final Judgment was signed.

### 1. Statute of limitations for suit to enforce a foreign judgment

Sunbelt and Baer point out certain conclusions that we reached in *Grammer I*, and they assert that those conclusions control the issues raised in this appeal. In connection with our analysis of whether the trial court had correctly applied Nevada limited-partnership law when it granted the Grammer Parties' Rule 91a motion to dismiss, we concluded that Sunbelt and Baer's suit against the Grammer Parties is a common-law suit to enforce their cost awards permitted by an exception in the Texas Uniform Enforcement of Foreign Judgments Act. *See Grammer I*, 2019 WL 7342249, at *9 (citing Tex. Civ. Prac. & Rem. Code § 35.008 ("A judgment creditor retains the right to bring an action to enforce a judgment instead of proceeding under this chapter."); *Brown*, 124 S.W.3d at 902). We further concluded that Sunbelt and Baer's suit seeks a judgment against a general partner of the Nevada partnerships under Nevada Revised Statutes Section 87A.370(2), which would authorize their recovery against the general partner's assets under Section 87A.370(3)(b).[13] *Id.* We also determined that "under California law—applicable here because a California court issued the cost awards—a cost award quantified postjudgment is

---

[13] We explained that Nevada law provides that "a general partner's judgment creditor—as Appellants are attempting to become—may execute against a general partner's assets to satisfy a judgment based on a claim against the limited partnership if the partner is personally liable for the claim under 87A.365 and 'the limited partnership is a debtor in bankruptcy.'" *See Grammer I*, 2019 WL 7342249, at *9 (citing Nev. Rev. Stats. § 87A.370(2)-(3)). We concluded that subsections (2) and (3) of Section 87A.365 involve fact issues that must be resolved to determine whether and to what extent a general partner may be held jointly and severally liable for partnership debt. *See id.* Those fact issues include when the person became a general partner, when the limited partnership incurred the obligation, and whether the limited partnership incurred the obligation while it was a registered limited-liability limited partnership. *See id.* (citing Nev. Rev. Stats. § 87A.365(2)-(3)).

25

made part of the judgment," and thus, Sunbelt and Baer are judgment creditors of the Debtor Partnerships.[14] *Id.*

As we stated in *Grammer I*, Sunbelt and Baer brought a common-law suit to enforce their cost awards against the Grammer Parties. Texas applies a ten-year limitations period to proceedings to enforce foreign judgments whether those actions are brought under the Texas Uniform Enforcement of Foreign Judgments Act, *see* Tex. Civ. Prac. & Rem. Code §§ 35.001-.008, or as here, in a common-law proceeding for enforcement of a foreign judgment, *see id.* § 35.008 (allowing common-law proceeding). *See id.* § 16.066(b) (establishing limitations period). Sunbelt and Baer are thus correct that their 2017 suit to enforce the judgment was timely brought whether a 2011, 2014, or later accrual date is used for the California cost judgments. However, that conclusion does not answer the question of whether the trial court erred by granting summary judgment on limitations grounds as to their claim that Donald is liable for the cost awards as a general partner (and the accompanying claim that the Grammer Parties are vicariously liable for the cost awards). We turn next to that question.

### 2. Law applicable to suit to enforce foreign judgment

"It is well established that the final judgment of a sister state must be given the same force and effect it would be given in the rendering state." *Markham v. Diversified Land & Expl. Co.*, 973 S.W.2d 437, 439 (Tex. App.—Austin 1998, pet. denied) (citing U.S. Const. art. IV, § 1 (requiring that each state give full faith and credit to public acts, records, and judicial proceedings of every other state)). When a party initiates a common-law action to enforce a foreign judgment, the proceeding has the same character as any other civil proceeding. *Brown*,

---

[14] The Grammer Parties argued that the cost awards were not "judgments" and that Sunbelt and Baer are not judgment creditors.

124 S.W.3d at 902. The judgment creditor, as plaintiff, initiates the action; the judgment debtor, as defendant, can assert his defenses; and then an appealable judgment results. *Id.*

After the party who seeks to enforce a foreign judgment has presented a judgment that appears to be a final and valid judgment, the burden then shifts to the party resisting enforcement of the judgment to establish an exception to the Full Faith and Credit Clause. *Id.* Recognized exceptions to that clause's requirements include that (1) the judgment is interlocutory, (2) the judgment is subject to modification under the law of the rendering state, (3) the rendering state lacked jurisdiction, (4) the judgment was procured by extrinsic fraud, and (5) limitations had expired. *Id.*

As part of Sunbelt and Baer's suit to enforce the foreign judgment, they make a claim that the judgment is enforceable against Donald as a general partner of the Debtor Partnerships and that the other Grammer Parties are vicariously liable for the judgment under the various theories related to Sunbelt and Baer's allegations of fraud and fraudulent transfers, but ultimately the other Grammer Parties' vicarious liability depends on Donald's general-partner liability. Donald and the Grammer Parties contend that this claim for general-partner liability is subject to a four-year limitations period and that the limitations period runs from the initial 2011 California judgment, relying on the holding in *American Star* to support their argument that Sunbelt and Baer's claim should accrue from the point that a judgment existed against the Debtor Partnerships. *See* 457 S.W.3d at 434 ("This action to collect the judgment debt from the Partners does not require relitigation of that claim [against the partnership]. At issue is only whether the judgment exists and whether the Partners were in fact partners at the time of injury alleged.").

In *American Star*, the Texas Supreme Court considered whether a plaintiff seeking to enforce a partner's liability for a partnership debt was required to sue the partner

within the limitations period for the underlying claim against the partnership. *Id.* at 428. Under Texas partnership law, "[a] judgment against a partnership is not by itself a judgment against a partner," Tex. Bus. Orgs. Code § 152.306(a), so a creditor must obtain a judgment against the partner individually and may do so either in the suit against the partnership or in a separate suit, *id.* § 152.305. *American Star*, 457 S.W.3d at 429-30. But the judgment creditor may not seek satisfaction of the judgment against a partner until a judgment is rendered against the partnership, plus a 90-day period in which the judgment has gone unsatisfied. *Id.* at 430 (citing Tex. Bus. Orgs. Code § 152.306(b)(2)(A)).

The court concluded that the applicable statutes of limitations did not specify when accrual of the claim occurs, citing Tex. Civ. Prac. & Rem. Code §§ 16.004(a)(3) (establishing four-year limitations period to bring suit on debt), .051 (establishing four-year residual limitations period). *See American Star*, 457 S.W.3d at 431. The court determined as follows:

> In light of a partnership's status as a separate entity and the statutory prerequisites to proceeding against a partner, we hold that the cause of action against a partner does not accrue until a creditor can proceed against a partner's assets—that is, generally at the expiration of the ninety-day satisfaction period [required by statute for the judgment to go unsatisfied].

*Id.* The court explained that its holding "avoids the injustice of a partner shielding himself from liability through limitations where their policy purposes are not served." *Id.* at 435 (noting that "individuals who choose the partnership form as the vehicle for their enterprise do so knowing that their personal assets are on the line").

Sunbelt and Baer must establish general-partner liability for Donald as a necessary predicate to their enforcement of cost awards ordered against the now-bankrupt Debtor

28

Partnerships. We agree that the Texas four-year statute of limitations for establishing general-partner liability applies to this claim. *See, e.g.*, *Intevep, S.A. Rsch. & Tech. Support Establishment v. Sena*, 41 S.W.3d 391, 394 (Tex. App.—Dallas 2001, no pet.) ("As a general rule, questions of substantive law are controlled by the laws of the state where the cause of action arose, but matters of remedy and procedure are governed by the laws of the state where the action is sought to be maintained." (citing *California v. Copus*, 309 S.W.2d 227, 230 (Tex. 1958)); *PennWell Corp. v. Ken Assocs., Inc.*, 123 S.W.3d 756, 764 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("Generally what is a matter of substance and what is a matter of procedure is determined by the law of the forum state according to its own laws."); *Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex. 1999) ("Statutes of limitations are procedural."). However, we must look to California law to determine when Sunbelt and Baer could "proceed against a partner's assets," *American Star*, 457 S.W.3d at 431, to enforce the cost awards because they are foreign judgments.

"A properly proven foreign judgment or *final, enforceable order* must be recognized and given effect coextensive with that to which it is entitled in the rendering state." *Daus v. Daus*, No. 05-13-00060-CV, 2014 WL 2109379, at *2 (Tex. App.—Dallas May 14, 2014, pet. denied) (mem. op.) (emphasis added) (citing *Bard v. Charles R. Myers Ins. Agency, Inc.*, 839 S.W.2d 791, 794 (Tex. 1992)). "The full faith and credit clause requires that a valid judgment from one state be enforced in other states regardless of the laws or public policy of the other states." *Bard*, 839 S.W.2d at 794. The validity of the judgment is determined by the laws of the state where it was rendered. *Id.* at 795. Thus, we apply the Texas statute of limitations to determine whether the proceeding was timely brought, but we apply California law to determine

29

when the cost awards became valid, final, and enforceable judgments, which has ramifications for our determination of the accrual date for limitations purposes.

### 3. When a California cost award becomes an enforceable judgment under California law

Sunbelt and Baer assert that the 2011 California judgment became final under California law in the 2019 California Final Judgment, which is part of the summary-judgment evidence before the trial court. In the 2019 California Final Judgment, the trial court stated that it "*having now fully and finally ruled upon all post-judgment costs* and/or attorneys' fees claims, accordingly revises this [2011] Judgment *nunc pro tunc* to add such costs awards." (First emphasis added.) The trial court detailed the course of the post-judgment cost awards and various appeals of cost awards and the amounts of those awards.

California law about when a judgment becomes final, conclusive, and enforceable differs from Texas law. "[I]n California a judgment is not final and conclusive between the parties when it is on appeal, or for as long as it remains subject to appeal . . . ." *Manco Contracting Co. (W.L.L.) v. Bezdikian*, 195 P.3d 604, 611 (Cal. 2008). Furthermore, "[t]he statute of limitations for an action on a judgment does not accrue until the judgment is final. The judgment is not final until the time within which to appeal the judgment has expired." *Kertesz v. Ostrovsky*, 8 Cal. Rptr. 3d 907, 910 (Cal. Ct. App. 2004) (citing *Turner v. Donovan*, 126 P.2d 187, 188-89 (Cal. Dist. Ct. App. 1942)); *see also Green v. Zissis*, 7 Cal. Rptr. 2d 406, 408 (Cal. Ct. App. 1992) ("A cause of action on a judgment accrues when 'the judgment has become final either upon expiration of the period within which an appeal may be taken, or, if an appeal is taken, upon the issuance of the remittitur when the judgment has been affirmed.'" (quoting *Hoover v. Galbraith*, 498 P.2d 981, 985 (Cal. 1972)). This enforceability rule also holds true for

minute orders on Section 1032 prevailing-party costs awarded postjudgment. *See Gallardo v. Specialty Rests. Corp.*, 100 Cal. Rptr. 2d 884, 887 (Cal. Ct. App. 2000) (stating that "enforcement of the section 1032 [routine prevailing-party] costs is automatically stayed pending appeal under these circumstances" in case addressing what amount of undertaking is required when party seeks to appeal judgment for expert-witness costs under Section 998 and routine prevailing-party costs under Section 1032). An award of costs on appeal, however, immediately becomes enforceable as a money judgment and is immediately appealable without waiting for the underlying case to conclude. *See Krikorian Premiere Theatres, LLC v. Westminster Cent., LLC*, 123 Cal. Rptr. 3d 379, 386-87 (Cal. Ct. App. 2011) (citing Cal. R. Ct. 8.278(c)(3) (governing costs on appeal)).

In its August 17, 2016 opinion, the California court of appeals affirmed the earliest awards of Section 1032 prevailing-party costs—the two awards in the November 13, 2014 minute order; it also awarded Sunbelt and Baer their costs on appeal. *See Banyan*, 2016 WL 4382635, at *1-2, *7-11 (affirming trial court's ruling denying Debtor Partnerships' motion to strike or tax Section 1032 costs and ordering that Sunbelt and Baer "shall recover their costs on appeal"). Thus, the earliest that any cost award became enforceable was after that August 17, 2016 opinion, making that the earliest possible accrual date for the general-partner liability claim.[15] Consequently, Sunbelt and Baer's claim for general-partner liability filed in April 2017 was filed well within the Texas four-year statute of limitations. We conclude that the

---

[15] As detailed in the background section above, the trial court denied the Debtor Partnerships' motions to tax costs (i.e., to disallow recovery for the costs that Sunbelt and Baer had incurred in the appeal) on October 13, 2017. And by minute order dated December 11, 2017, on remittitur after Sunbelt's successful appeal, the California trial court ordered the $281,264.94 award for receiver fees.

Grammer Parties failed to conclusively prove that the claim accrued in 2011 and that Sunbelt and Baer brought their suit more than four years later. *See Draughon*, 631 S.W.3d at 89. Therefore, the trial court erred when it granted the summary-judgment motions on limitations grounds.

We sustain Sunbelt and Baer's first and third issues on appeal. We reverse the trial court's orders granting the motions for partial summary judgment.[16]

## The Grammers' Cross-Appeal

On cross-appeal, the Grammers challenge the award of appellate attorneys' fees to Sunbelt and Baer, which (1) is not conditioned on Sunbelt and Baer's prevailing on an appeal of the Rule 91a attorney-fees award and (2) exceeded the scope of their motion for attorneys' fees because it awarded them fees for any appeal to the Texas Supreme Court, even if they file the appeal on the merits (as opposed to the attorney-fees issue) and do not prevail.[17] In response, Sunbelt and Baer contend that the Grammers waived their appellate complaint by failing to object to the language in either the proposed interlocutory order or the proposed final judgment and by failing to file a motion for reconsideration or rehearing regarding either order.

The principle that "[a] party should not be penalized for pursuing a meritorious appeal" is well established in Texas law. *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 115 (Tex. 2018). A trial court's award of conditional appellate attorney's fees to a party "is essentially an award of fees that have not yet been incurred," which "the party is not entitled to

---

[16] Because we are reversing and remanding these orders, we need not address Sunbelt and Baer's second issue on appeal, asserting that the trial court erred by granting more relief than Donald's motion requested. *See* Tex. R. App. P. 47.1.

[17] The trial court awarded Sunbelt and Baer the Rule 91a attorneys' fees against the individual Grammers (Donald, Brenda, Daralyn, and Gregory), jointly and severally. Thus, they are the only proper cross-appellants even though the notice of cross-appeal was filed on behalf of all the Grammer Parties.

recover unless and until the appeal is resolved in that party's favor." *Id.* (quoting *Ventling v. Johnson*, 466 S.W.3d 143, 156 (Tex. 2015)). Texas courts routinely hold that an award of appellate attorneys' fees must be conditioned upon an unsuccessful appeal by appellant. *See, e.g.*, *Hoefker v. Elgohary*, 248 S.W.3d 326, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "The proper remedy for an unconditional award of appellate attorney's fees is to modify the judgment and to make the award contingent upon the receiving party's success on appeal." *Id.* Similarly, courts have modified ambiguous language concerning appellate attorneys' fees. *See, e.g.*, *Keith v. Keith*, 221 S.W.3d 156, 171 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

This Court has previously rejected the argument that the party challenging an unconditional award of appellate attorneys' fees must object to the award in the trial court. *See 271 Truck Repair & Parts, Inc. v. First Air Express, Inc.*, No. 03-07-00498-CV, 2008 WL 2387630, at *10 (Tex. App.—Austin June 11, 2008, no pet.) (mem. op.). We reasoned that a party is not entitled to an unconditional award and that this error requires only a modification of the judgment. *Id.* In addition, we have implied that an award of appellate fees was conditioned on a successful appeal by the award recipient even where the award was not challenged for this reason "because unconditional appellate fees are improper." *Santos v. Texas Enters., Inc.*, No. 03-09-00579-CV, 2010 WL 4054479, at *5 n.4 (Tex. App.—Austin Oct. 15, 2010, no pet.) (mem. op.). We conclude that the Grammers did not waive their issues regarding appellate attorneys' fees.

The trial court's final judgment ordered that if the Grammers "initiate an appeal of this Final Judgment," Sunbelt and Baer, "jointly, are awarded the further sum of $20,000 for appellate counsel fees at the Third Court of Appeals." It further ordered that

if the appellate decision regarding this Final Judgment is appealed to the Texas Supreme Court that Southern California Sunbelt Developers, Inc. and Dan Baer, jointly, are awarded the further sum of $3,000.00 for the petition for review stage, $10,000.00 if a response is requested by the Texas Supreme Court, $15,000.00 if full briefing is requested by the Texas Supreme Court, and $10,000.00 if oral argument is ordered by the Texas Supreme Court.

The Grammers contend that in addition to being improperly unconditional, this language goes beyond the scope of the attorneys' fees sought by Sunbelt and Baer. While the award for an appeal to this Court is limited to an appeal by the Grammers (who lost on only the issue of Rule 91a attorneys' fees), the award for an appeal to the Texas Supreme Court is expanded to an appeal of any issue in the final judgment because it is not limited to an appeal brought by the Grammers related to the Rule 91a attorney-fees award. We agree that the only basis upon which Sunbelt and Baer sought attorneys' fees, and the only basis upon which the trial court could award such fees, was under Rule 91a.

We modify the challenged portion of the final judgment related to appellate attorneys' fees as follows:

> ORDERED that in the event of an unsuccessful appeal of the award of Rule 91a attorneys' fees by Donald B. Grammer, Brenda J. Grammer, Daralyn E. Grammer-Allen or Gregory M. Grammer (collectively, the Grammers), Southern California Sunbelt Developers, Inc. and Dan Baer, jointly, are awarded the further sum of $20,000.00 for appellate counsel fees at the Third Court of Appeals; and in the event of an unsuccessful appeal by the Grammers of the Third Court of Appeals' decision related to Rule 91a attorneys' fees to the Texas Supreme Court, Southern California Sunbelt Developers, Inc. and Dan Baer, jointly, are awarded the further sum of $3,000.00 for the petition-for-review stage, $10,000.00 if a response is requested by the Texas Supreme Court, $15,000.00 if full briefing is requested by the Texas Supreme Court, and $10,000.00 if oral argument is ordered by the Texas Supreme Court.

We sustain the Grammers' issue on cross-appeal.

34

## CONCLUSION

Because we hold that the trial court abused its discretion by awarding unconditional appellate attorneys' fees not limited to an unsuccessful appeal by the Grammers of the Rule 91a attorneys' fees, we modify the final judgment as stated above. The unchallenged portions of the judgment on attorneys' fees remain in place. Because we sustain Sunbelt and Baer's first and third issues and hold that the trial court erred by granting the partial summary judgments on limitations grounds, we reverse (1) the trial court's dismissal of Sunbelt and Baer's claims against Donald for general-partner liability arising from the California cost awards against the Debtor Partnerships and (2) its dismissal of all claims against the other Grammer Parties based on vicarious general-partner liability. We remand the case to the trial court for further proceedings consistent with this opinion.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Modified, and as Modified, Affirmed in Part; Reversed and Remanded in Part

Filed: March 27, 2026